**UNITED STATES of America ex rel. Vernon FOSTER, #H-0813**

v.

**David N. MYERS, Superintendent.**

**Misc. No. 3011.**

United States District Court
E. D. Pennsylvania.

Jan. 25, 1966.

Vernon Foster, in pro. per.

James C. Crumlish, Jr., Dist. Atty., Abner H. Silver, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

BODY, District Judge.

The relator is presently confined in the State Correctional Institution at Graterford, Pennsylvania, having been sentenced on three counts of burglary, larceny and receiving stolen goods to an aggregate term of five to twenty years [1] by the Court of Quarter Sessions, Philadelphia, Pennsylvania.

He pleaded guilty to a total of ten counts but sentence was suspended on the remaining seven bills of indictment. Relator was represented at his arraignment, guilty plea, and sentence by Jerome Balka, Esquire, of the Voluntary Defender Association of Philadelphia. Hav-

---

1. The original sentences were imposed on March 17, 1961. The same day petitioner entered his pleas of guilty and was sentenced as follows:
    (a) Bill No. 1399—5 to 10 years
    (b) Bill No. 1400—5 to 10 years
    (c) Bill No. 1401—5 to 10 years
These sentences were to run consecutively making an aggregate term of 15 to 30 years. However, on March 29, 1961, after recommendations, the original sentences were vacated and changed to an aggregate of 5 to 20 years as follows:
    (a) Bill No. 1399—2 to 7½ years
    (b) Bill No. 1400—2 to 7½ years
    (c) Bill No. 1401—1 to 5 years
Relator was sentenced on both occasions by Judge Raymond Pace Alexander of the Court of Quarter Sessions, Philadelphia County.

ing exhausted his state remedies pursuant to 28 U.S.C. § 2254, he now petitions this Court for a Writ of Habeas Corpus.

This Court afforded relator an independent hearing under the guidelines set forth by the United States Supreme Court in the already famous case of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). At that hearing the relator told his version of the events surrounding his arrest, confession, and subsequent guilty pleas, after which the two arresting detectives, Mr. America Finizio and Mr. Rocco Vivarino, took the stand and contradicted his testimony in every important detail. We are satisfied beyond any doubt that the officers' version of the facts is the correct one.

At approximately 3:00 A.M. on the morning of February 11, 1961 detectives Finizio and Vivarino were patrolling the West Philadelphia area of the city when they spotted the relator and one David Gilliard standing in the vestibule of an apartment at 40th and Baring Streets. Upon questioning, the two youths explained that they wanted to visit a woman in the apartment. The detectives inquired within and soon learned that no one in the building knew either Foster or Gilliard. Relator had a screw driver in his belt and his companion was concealing a butter knife in his coat sleeve. The two were then taken to a police station at 55th and Pine Streets in Philadelphia, and after being questioned further for about one and a half hours, relator readily admitted that he wanted to "get" (burglarize) the house at which they were apprehended and that is why they were waiting in the vestibule. He also admitted having committed numerous other burglaries in that general area and proceeded to lead the detectives to an apartment at 4032 Powelton Avenue which he shared with Gilliard. The room contained a record player, sewing machine, vacuum cleaner, articles of clothing, and other items which the duo had not yet sold or otherwise disposed of.

The relator was then returned to the police station,[2] was given breakfast, and at daybreak he voluntarily directed the detectives on a patrol car tour to point out the various homes at which he had done "jobs" at one time or another. During this time relator freely cooperated with the police and constantly showed signs of remorse over his felonious deeds.

At one home in particular an old woman burst into tears as she recounted how her wedding ring had recently been stolen. Upon being confronted with her statement, relator explained how sorry he felt but he had unfortunately sold the ring to someone on the street. At other locations he actually demonstrated exactly how he jimmied open the doors with the aid of the butter knife and screw driver. After this tour of the neighborhood relator was again taken to the police station where he signed a written statement containing the admissions he had made earlier.

Relator admitted doing a total of thirty-five or forty "jobs" over a period of four to five months. However, he was charged with only ten counts of burglary, larceny and receiving stolen goods since the police were certain of his implication in the latter number.

In his present petition relator alleges that he is unlawfully confined for several reasons: (1) his written statement or confession obtained by the police was coerced and involuntary because the police administered physical beatings, made other threats and false promises; (2) he pleaded guilty on advice of defense counsel but did not realize the significance of his plea; (3) the sentence by the trial judge was influenced by the judge's knowledge that relator had committed other burglaries. Both on the basis of the state court record and the record of his federal habeas corpus hearing, which contains ninety-seven pages of

2. David Gilliard was not indicted as a co-conspirator but was apparently turned over to the Philadelphia Juvenile Authorities for questioning and further investigation.

testimony, we find no merit whatsoever in relator's contentions. In fact, the federal court record contains so many statements which are materially inconsistent both with those he gave to the police and the testimony he gave under oath in the state court that one is led to the conclusion that this petitioner either possesses almost no power of recall or he deliberately perjured himself before this Court, thereby making a hollow mockery of the Great Writ. In any event, I give little or no weight to his most recent testimony and conclude, without further discussion, that his petition must be denied with respect to each and every ground alleged in support thereof.